Bart v. Golub Corp.

# In the
# United States Court of Appeals
## For the Second Circuit

---

August Term, 2023
No. 23-238

ELAINE BART,
*Plaintiff-Appellant,*

*v.*

GOLUB CORPORATION,
*Defendant-Appellee.*

---

On Appeal from a Judgment of the United States District Court for
the District of Connecticut.

---

SUBMITTED: JANUARY 10, 2024
DECIDED: MARCH 26, 2024

---

Before: KEARSE, LYNCH, and NARDINI, *Circuit Judges.*

---

Plaintiff-Appellant Elaine Bart sued her former employer, Defendant-Appellee Golub Corporation ("Golub"), for discrimination under Title VII and state law after she was fired from her job as a supermarket manager. Golub asserted that it fired Bart

because she violated store policy by falsifying food logs. Bart admits the violation, but she also claims that Golub fired her because of her gender. She testified that her direct supervisor, who was involved in her termination, had made numerous remarks to her as recently as two months before her termination indicating that women were unsuited to be managers. The United States District Court for the District of Connecticut (Kari A. Dooley, *District Judge*) granted summary judgment to Golub, reasoning that Bart's admission that Golub's stated reason for her termination was legitimate and non-discriminatory was dispositive of the pretext inquiry, defeating her claims. We disagree, and reaffirm our Court's precedent that to survive summary judgment on a Title VII disparate treatment claim, a plaintiff may, but need not, show at the third stage of the *McDonnell Douglas* burden-shifting test that the employer's stated justification for its adverse action was a pretext for discrimination; a plaintiff may also satisfy this burden by adducing evidence that even if the employer had mixed motives, the plaintiff's membership in a protected class was at least one motivating factor in the employer's adverse action. We therefore VACATE the district court's judgment and REMAND for proceedings consistent with this opinion.

---

James V. Sabatini, Sabatini and Associates, LLC, Newington, CT, *for Plaintiff-Appellant*.

Joshua Auxier, FLB Law, PLLC, Westport, CT, *for Defendant-Appellee.*

---

WILLIAM J. NARDINI, *Circuit Judge*:

In this opinion, we clarify and reaffirm foundational principles governing pretext and causation in Title VII disparate treatment claims. Plaintiff-Appellant Elaine Bart, a female manager at Price Chopper, a supermarket chain operated by Defendant-Appellee Golub Corporation ("Golub"), was fired two days after she was disciplined for falsifying food logs that are maintained for health and safety purposes. Golub's stated reason for firing Bart was her violation of store policy. Bart admits that she violated Golub's food log policy, but nevertheless claims that she was fired because of her gender. Bart then testified in a deposition for this action that her direct supervisor, who the parties agree was involved in the termination decision, had made numerous remarks to her as recently as two months earlier indicating that he believed that women were unsuited to be managers.

The United States District Court for the District of Connecticut (Kari A. Dooley, *District Judge*) awarded summary judgment to Golub, reasoning that even assuming that Bart had established a prima facie case, her "acknowledgement that the reason provided for her termination was factually accurate and valid under [Golub]'s policies and procedures[] is dispositive of the pretext issue." *Bart v. Golub Corp.*, No. 3:20-CV-00404 (KAD), 2023 WL 348102, at *5 (D. Conn. Jan. 20, 2023). We disagree. To survive summary judgment on a Title VII disparate treatment claim, a plaintiff may, but need not, show at the third stage of the *McDonnell Douglas* burden-shifting test that the employer's stated justification for its adverse action was nothing but a pretext for discrimination; however, a plaintiff may also satisfy this burden by adducing evidence that, even if the employer had mixed motives, the plaintiff's membership in a protected class was at least one motivating factor in the employer's adverse action.

Bart's testimony about her supervisor's remarks indicating gender bias satisfied her burden in this case, precluding summary judgment.

We therefore VACATE the district court's judgment and REMAND for further proceedings consistent with this opinion.

## I.   Background

The following facts are taken from the summary judgment record, which includes depositions.  Because this appeal arises from a grant of summary judgment, we view the evidence in the light most favorable to Bart as the non-moving party and draw all reasonable inferences in her favor.  *Reese v. Triborough Bridge & Tunnel Auth.*, 91 F.4th 582, 589 (2d Cir. 2024).

Bart worked as a team leader managing the food service and deli departments at Price Chopper supermarkets operated by Golub from 2011 to 2018.  Her duties included overseeing the store's hot food stations to ensure quality and presentation standards and compliance with sanitation procedures and regulations, which entailed keeping food logs.

In August 2016, Bart was admonished for failure to maintain food logs, for which she admitted responsibility. She received another formal warning the same day for falsification of cooling logs, which she denies.

In the summer of 2017, Bart was transferred to the Price Chopper in Oxford, Connecticut at the request of that location's manager, Damon Pappas, who became Bart's immediate supervisor there. Bart claims that Pappas treated her and her colleagues poorly. He commented to Bart that one of her female coworkers was a "ding dong" and "shouldn't have a job," and called another female coworker an "idiot." J.A. 199. Pappas also stated in front of other employees that "he should have fired [Bart] years ago," and that "ten-year-olds could do [Bart's job] better [than Bart]." *Id.* 201–02.

In addition to these generally rude comments, Bart alleges that Pappas made several remarks to her expressly indicating gender bias. Specifically, Bart testified that Pappas remarked directly to her on at

least three occasions that "he didn't think women should be managers." *Id.* 209–11. She also testified that he stated in her presence that being a manager was "too stressful" for women and that women were "too sensitive to be managers." *Id.* 217. The most recent gender-based remark was in June 2018.

After her transfer to the Oxford Price Chopper, Bart was disciplined on multiple occasions. In April 2018, she was cited again (as she had been at a prior location) for "failing to keep the logbooks properly." J.A. 173. A few months later, on August 16, 2018, "Pappas formally admonished her for several deficiencies in her departments." *Id.* That same day, Bart raised concerns to Karen Bowers, a Golub HR employee, about Pappas's poor treatment of Bart and other employees, "which consisted of disrespectful speech and discussing [Bart's] job performance with other employees." *Id.*

Ten days later, on August 26, Bart was disciplined a third time in Oxford, this time for falsifying food logs, for which she admitted

responsibility. Bart requested a job transfer that same day, citing Pappas's allegedly poor treatment of her. Two days later, on August 28, Pappas documented the circumstances surrounding the August 26 incident, as well as more issues with Bart's performance, in emails to an HR employee. He stated that "there have been numerous missing entries on the food service logs, out of code products in the walk-in cooler not discarded, product put out for sale not logged on the service logs, and product left out for sale after the allowable selling times," *id.* 178–79—errors that Bart admits. Bart was fired that day. The parties agree that Pappas was involved in Golub's decision to terminate Bart's employment.

On September 7, 2018, Bart sought internal review of her termination. She requested less severe discipline, noting that her department had recently been understaffed, but she did not allege gender discrimination at that time. When asked in her deposition why she believed she was fired, Bart speculated it was because

8

Pappas had learned that she requested a transfer and because he "had issues with . . . [her] as a woman." J.A. 100–01.

Bart filed this lawsuit in March 2020, claiming that Golub discriminated against her by firing her because of her gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60. Golub moved for summary judgment, arguing that Bart could not raise a genuine dispute of material fact as to either an inference of discrimination by Golub as required to establish a prima facie case, or that Golub's stated reason for her termination—her violations of Golub's food log policy—was pretextual.

The district court granted the motion, reasoning that even if Bart had established a prima facie case of discrimination, her "acknowledgement that the reason provided for her termination was factually accurate and valid under Defendant's policies and

9

procedures[] is dispositive of the pretext issue" as to both causes of action. *Bart*, 2023 WL 348102, \*5. Bart now appeals.

## II. Discussion

The sole issue on appeal is whether Bart has adduced sufficient evidence to satisfy her third-stage burden under *McDonnell Douglas Corp. v. Green* after her employer proffered a legitimate, nondiscriminatory reason for her termination, 411 U.S. 792, 804 (1973). For the reasons that follow, we conclude that she has.

We review the district court's grant of summary judgment *de novo*. *Reese*, 91 F.4th at 589. We "may affirm only if the record reveals no genuine issue of material fact for trial. Summary judgment is improper if the evidence is such that a reasonable jury could return a verdict for a nonmoving party." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 258 (2d Cir. 2023) (internal quotation marks and citations omitted).

**A. Causation and Pretext Under Title VII**

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The CFEPA prohibits the same, *see* Conn. Gen. Stat. § 46a-60(b)(1), and employs the same standards as Title VII, *see Rossova v. Charter Commc'ns, LLC*, 211 Conn. App. 676, 684–85 (2022). We accordingly analyze these claims together under the relevant Title VII standards.

To succeed on a Title VII disparate treatment claim, a plaintiff must prove "discrimination either by direct evidence of intent to discriminate" or, more commonly, by "'indirectly showing circumstances giving rise to an inference of discrimination.'" *Banks*, 81 F.4th at 270 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)). As is well documented in this Court's case law, "[w]here an employer has acted with discriminatory intent,

11

direct evidence of that intent will only rarely be available." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008); *see also Vega*, 801 F.3d at 86 ("[T]he court must be mindful of the 'elusive' nature of intentional discrimination."). Circumstantial evidence is often the sole avenue available to most plaintiffs to prove discrimination.

When only circumstantial evidence of discriminatory intent is available, courts use the *McDonnell Douglas* burden-shifting framework to assess whether the plaintiff has shown sufficient evidence of discrimination to survive summary judgment. *Banks*, 81 F.4th at 270; *Porter v. Dartmouth-Hitchcock Med. Ctr.*, 92 F.4th 129, 149 (2d Cir. 2024) ("The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the plaintiff [has her] day in court *despite the unavailability* of *direct* evidence." (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (emphases added in *Porter*)).

A plaintiff's first step under *McDonnell Douglas* is to establish a prima facie case of discrimination by showing that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Banks*, 81 F.4th at 270 (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)). The burden at this stage "is not onerous." *Id.* (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)). Once the plaintiff has established a prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its adverse action. *Vega*, 801 F.3d at 83 (quoting *McDonnell Douglas*, 411 U.S. at 802). Upon that showing, the burden then shifts back to the plaintiff to prove that the employer's stated reason was pretext for discrimination. *Id.*; *Banks*, 81 F.4th at 270–71.

However—as is crucial in this case—while a plaintiff *may* satisfy the third-stage burden under *McDonnell Douglas* by showing

that the employer's stated reason was false and just a pretext, or cover, for a discriminatory intent, a plaintiff is not *required* to demonstrate the falsity of the employer's proffered reason. *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 156 (2d Cir. 2010) ("A plaintiff has no obligation to prove that the employer's innocent explanation is dishonest, in the sense of intentionally furnishing a justification known to be false."). Instead, "a Title VII plaintiff can prevail by proving that an impermissible factor was a *motivating factor*, without proving that the employer's proffered explanation was not some part of the employer's motivation." *Fields v. N.Y. State Off. of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 120 (2d Cir. 1997) (emphasis added) (internal quotation marks omitted); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995) ("[T]he plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the *only* reasons and that the prohibited factor was at least one of the

14

motivating factors." (emphasis added) (internal quotation marks omitted)). A plaintiff may rely on other evidence that an impermissible criterion was a motivating factor in the employer's decision to take the adverse action.

To understand why, it is helpful to trace the development of the plaintiff's causal burden in Title VII disparate treatment cases. In 1964, Congress enacted Title VII, which prohibits discrimination "because of" a plaintiff's membership in a protected class. 42 U.S.C. § 2000e-2(a)(1). As the Supreme Court has observed, "the ordinary meaning of 'because of' is 'by reason of' or 'on account of.'" *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350 (2013) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)). Such language suggests a "but-for" standard of causation. *See Gross*, 557 U.S. at 176. But-for causation "is established whenever a particular outcome would not have happened 'but for' the purported cause." *Bostock v. Clayton County*, 590 U.S. 644, 656 (2020).

In 1973, the Supreme Court developed the now-familiar three-stage burden-shifting framework under *McDonnell Douglas* to govern the allocation of proof between the parties at summary judgment in a Title VII disparate treatment claim where the plaintiff does not possess direct evidence of intentional discrimination by the employer. *See* 411 U.S. at 800–07. This framework was used by courts in all Title VII disparate treatment cases until 1989, when the Supreme Court decided *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

In *Price Waterhouse*, a plurality of the Court clarified the causal burden under Title VII: "[an employee's membership in a protected class] must be irrelevant to employment decisions. To construe the words 'because of' as colloquial shorthand for 'but-for causation' . . . is to misunderstand them." *Id.* at 240. The plurality reasoned that "the words 'because of' do not mean '*solely* because of'" and "Title VII meant to condemn even those decisions based on a mixture of legitimate and illegitimate considerations." *Id.* at 241

(footnote omitted).  Accordingly, "[w]hen . . . an employer considers both [an impermissible factor] and legitimate factors at the time of making a decision, that decision was 'because of' [the impermissible factor] and the other, legitimate considerations—even if we may say later, in the context of litigation, that the decision would have been the same if [the impermissible factor] had not been taken into account." *Id.*

To implement this new understanding of causation under Title VII, the plurality articulated a new allocation of proof to be applied in so-called "mixed motives" cases, as compared to so-called "single-motive" or "pretext" cases analyzed under the preexisting *McDonnell Douglas* framework: "once a plaintiff in a Title VII case shows that [an impermissible factor] played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed [the impermissible factor] to play such a role." *Id.* at 244–45.

17

This new test effectively shifted the ultimate burden of persuasion to the employer once the plaintiff produced evidence that an impermissible consideration was a motivating factor in the adverse action. The plurality justified this new proof regime by acknowledging that "[w]here a decision was the product of a mixture of legitimate and illegitimate motives, . . . it simply makes no sense to ask whether the legitimate reason was *the* true reason" for the decision, which was essentially the inquiry at the third stage of the original formulation of the *McDonnell Douglas* test. *Id.* at 247 (internal quotation marks omitted). Courts accordingly began to treat single-motive and mixed-motives cases differently, analyzing the former under *McDonnell Douglas* and the latter under *Price Waterhouse*. *See* Robert Belton, *Mixed-Motive Cases in Employment Discrimination Law Revisited: A Brief Updated View of the Swamp*, 51 Mercer L. Rev. 651, 657 (2000).

But the *Price Waterhouse* regime was not long for this world, as in 1991, Congress supplanted it by amending Title VII to include a motivating-factor causation standard. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 250–51 (1994). As relevant here, the 1991 amendments added the following provision to § 2000e-2: "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).[1] That provision statutorily codified the *Price Waterhouse* plurality's broader reading of "because of" as corresponding to a less onerous motivating-factor causation standard. *See Bostock*, 590 U.S. at 657 ("Congress . . . supplement[ed] Title VII in 1991 to allow a plaintiff to prevail merely by showing that a protected trait . . . was a 'motivating

---

[1] The CFEPA also requires only that an impermissible consideration was a motivating factor of the adverse action. *Wallace v. Caring Sols., LLC*, 213 Conn. App. 605, 626 (2022).

factor' in a defendant's challenged employment practice. Under this more forgiving standard, liability can sometimes follow even if [the impermissible consideration] *wasn't* a but-for cause of the employer's challenged decision." (internal citations omitted)). Congress also defined the term "demonstrate" to encompass both the burden of production *and* the burden of persuasion, 42 U.S.C. § 2000e(m), effectively overturning *Price Waterhouse* insofar as it held that the defendant-employer ever carries the burden of persuasion in a Title VII disparate treatment case. It also abrogated *Price Waterhouse* to the extent that the case allowed a defendant-employer to evade liability if it established the "same-decision" defense (that it would have taken the same adverse action even if it had not accounted for the impermissible factor); Congress instead limited only the scope of remedies available to a plaintiff proceeding under a mixed-motives theory if the defendant-employer establishes such an affirmative defense after the liability phase:

[o]n a claim in which an individual proves a violation under section 2000e-2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—

> (i)  may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and

> (ii)  shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).

*Id.* § 2000e-5(g)(2)(B).

After the 1991 amendments, it became unclear whether mixed-motives cases should be analyzed under the *McDonnell Douglas* framework, a modified *Price Waterhouse* framework, or something else. *See* William R. Corbett, McDonnell Douglas, *1973–2003: May You Rest in Peace?*, 6 U. Pa. J. Labor & Employment Law 199, 204–05 (2003). As identified in *Price Waterhouse*, it makes little sense to analyze a mixed-motives case under the original formulation of *McDonnell Douglas*, given that its third step was worded in a way that

21

presupposed that employers had only a single motive for their employment decisions. *See Price Waterhouse*, 490 U.S. at 247. Although *Price Waterhouse* suggested that mixed-motives cases should be analyzed under a different framework, nothing in the 1991 amendments blessed this distinction between single-motive and mixed-motives cases.

Nevertheless, the chasm between mixed-motives and single-motive cases persisted, primarily due to Justice O'Connor's arguably controlling concurrence in *Price Waterhouse*, which was often followed even after the 1991 amendments. In her concurrence, Justice O'Connor opined that in mixed-motives cases, "in order to justify shifting the burden on the issue of causation to the defendant, a disparate treatment plaintiff must show by *direct* evidence that an illegitimate criterion was a substantial factor in the decision." *Price Waterhouse*, 490 U.S. at 276 (O'Connor, *J.*, concurring in the judgment) (emphasis added). Amidst the confusion created by the interaction

22

between *Price Waterhouse* and *McDonnell Douglas* after the 1991 amendments, courts clung to this easy-to-apply distinction, primarily differentiating single-motive and mixed-motives cases based on whether the plaintiff possessed direct or circumstantial evidence of discrimination, applying *Price Waterhouse* to the former and *McDonnell Douglas* to the latter.  *See* Corbett, *supra*, at 204–05 ("Courts seized upon the distinction made by Justice O'Connor in her concurrence: cases involving direct evidence were analyzed under mixed-motives, and cases involving circumstantial evidence were analyzed under the pretext framework."); Belton, *supra*, at 657–58.

This Court also seemingly adhered to this rigid distinction by applying different standards in mixed-motives and single-motive cases early in the wake of *Price Waterhouse* and the 1991 amendments. *See, e.g.*, *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1180–81 (2d Cir. 1992) ("Employment discrimination cases . . . brought under [T]itle VII . . . are frequently said to fall within one of two categories:

'pretext' cases and 'mixed-motives' cases."); *de la Cruz v. N.Y. City Hum. Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20, 23 (2d Cir. 1996) ("Appellant asserts both a 'pretext' claim and a 'mixed motives' claim. . . . In a 'mixed motives' case, a plaintiff must initially proffer evidence that an impermissible criterion was *in fact* a 'motivating' or 'substantial' factor in the employment decision," as opposed to using the *McDonnell Douglas* framework); *Raskin v. Wyatt Co.*, 125 F.3d 55, 60 (2d Cir. 1997) ("In mixed-motive cases, we use the different analysis set out in *Price Waterhouse*. . . ."); *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 445 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999) ("Title VII suits fall into two basic categories: 'single issue motivation' and 'dual issue motivation' cases.").

But over time, this distinction seemed to fall away, precipitously so after the Supreme Court decided *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). There, the Court held that direct evidence is not required to obtain a mixed-motives jury instruction under Title

24

VII, *id.* at 92; *see Holcomb*, 521 F.3d at 141 n.3, removing any fissure between single-motive and mixed-motives cases based on direct versus circumstantial evidence. Since *Desert Palace*, this Court has consistently applied *McDonnell Douglas* at the summary judgment stage in both single-motive and mixed-motives cases. As we explained in 2015,

> once a Title VII claimant raises a prima facie case of discrimination and the employer offers a legitimate explanation, the court considers whether a reasonable jury could conclude that the employer's decision was motivated, in whole or in part, by discrimination. The plaintiff can survive summary judgment by showing that the employer's stated reason for the adverse employment action is entirely pretextual, *or* that the employer had mixed motives, one of which was the desire to discriminate.

*Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 n.13 (2d Cir. 2015) (emphasis added) (internal quotation marks omitted); *see also, e.g.*, *Holcomb*, 521 F.3d at 141–42 (utilizing the general contours of the *McDonnell Douglas* framework to analyze a mixed-motives claim).

In other words, when confronting mixed-motives and single-motive cases, our solution has been to offer two slightly different descriptions of how each type fits with the plaintiff's burden at the third stage of *McDonnell Douglas*. We have explained that a plaintiff may make *either* a traditional showing of "pretext"—*i.e.*, that the employer's stated reason was false, and that the sole actual reason was discrimination—*or* a showing that even if the employer's reason is true, discrimination was still a motivating factor in the employment decision. Thus, in *Holcomb v. Iona College*, we utilized the *McDonnell Douglas* framework to analyze a mixed-motives claim, but "stress[ed] . . . that a plaintiff who . . . claims that the employer acted with mixed motives is not *required* to prove that the employer's stated reason was a pretext." 521 F.3d at 141–42. Instead, at the last step of *McDonnell Douglas*, we held that "[a] plaintiff alleging that an employment decision was motivated both by legitimate and illegitimate reasons may establish that the 'impermissible factor was

26

a motivating factor, without proving that the employer's proffered explanation was not some part of the employer's motivation.'" *Id.* at 142 (quoting *Fields*, 115 F.3d at 120). Likewise, in *Naumovski v. Norris*, we distinguished between the causal burdens in a Title VII disparate treatment claim versus a claim under 42 U.S.C. § 1983, which applies a but-for causation standard:

> at the third step of the *McDonnell Douglas* analysis, a plaintiff asserting a § 1983 claim bears a higher burden in establishing that the employer's alternative, nondiscriminatory reason for the adverse employment action is "pretextual." To establish "pretext" under Title VII, a plaintiff need only establish that discrimination played a role in an adverse employment decision. In other words, a Title VII plaintiff need only prove that the employer's stated non-discriminatory reason was *not the exclusive* reason for the adverse employment action.

934 F.3d 200, 214 (2d Cir. 2019) (internal quotation marks and footnotes omitted). In *Henry v. Wyeth Pharmaceuticals, Inc.*, we recognized that a plaintiff satisfies the "pretext" requirement of *McDonnell Douglas* when he or she "prove[s] that discrimination played a role in motivating the adverse action taken against the

27

plaintiff." 616 F.3d at 157. And in *Walsh v. New York City Housing Authority*, we analyzed a plaintiff's disparate treatment claim under *McDonnell Douglas* where she admitted that she lacked experience in the role to which she applied, which the employer identified as its legitimate, nondiscriminatory reason for not hiring her, but nevertheless claimed that her gender was also a motivating factor in that decision. 828 F.3d 70, 74–80 (2d Cir. 2016).

These cases suggest that instead of applying different tests to mixed-motives and single-motive disparate treatment cases, we apply *McDonnell Douglas* to both types of cases, with the inquiry being articulated slightly differently in mixed-motives cases only at the third step, and even then, only to distinguish clearly between the factual theories of liability offered by the plaintiff.[2] The Fifth Circuit seems to follow a similar approach:

---

[2] This is not to say that every distinction between single-motive and mixed-motives cases has fallen away. The difference is still relevant to jury instructions, *see Desert Palace*, 539 U.S. at 98–101, and, of course, an employer in a mixed-motives

28

> [o]ur holding today . . . represents a merging of the
> *McDonnell Douglas* and *Price Waterhouse* approaches.
> Under this integrated approach, called, for simplicity, the
> modified *McDonnell Douglas* approach: the plaintiff must
> still demonstrate a prima facie case of discrimination; the
> defendant then must articulate a legitimate, non-
> discriminatory reason for its decision to terminate the
> plaintiff; and, if the defendant meets its burden of
> production, the plaintiff must then offer sufficient
> evidence to create a genuine issue of material fact either
> (1) that the defendant's reason is not true, but is instead
> a pretext for discrimination (pretext alternative); or
> (2) that the defendant's reason, while true, is only one of
> the reasons for its conduct, and another motivating factor
> is the plaintiff's protected characteristic (mixed-motives
> alternative).

*Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (internal

quotation marks and alteration marks omitted).[3]

---

case has the same-decision defense available to it to limit the plaintiff's remedies, *see Holcomb*, 521 F.3d at 142 n.4. Our point is only that the differences between those types of cases are irrelevant at the summary judgment stage.

[3] Other courts of appeals have also acknowledged the viability of a so-called "modified" or "integrated" *McDonnell Douglas* approach for mixed-motives cases. *See Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 577–78 (6th Cir. 2006) ("*Desert Palace* . . . does not purport to alter application of the *McDonnell Douglas* framework to pretrial analysis of discrimination claims based on circumstantial evidence at the summary judgment stage [in mixed-motives cases]. . . . [W]hether the evidence is evaluated in terms of *prima facie* case elements, pretext requirements, or a mixed motive analysis apart from the *McDonnell Douglas* framework, it is abundantly clear, in any event, that [the]

That long canvass of legal history brings us to present day. We take this opportunity to demystify the third-stage burden under *McDonnell Douglas*, which has admittedly not always been articulated in our case law with the utmost clarity, as demonstrated above. This understandable confusion is only compounded by the consistency with which courts continue to refer to this step for convenience

---

plaintiff . . . bears the ultimate burden of demonstrating by a preponderance of the evidence that . . . discrimination was at least *a motivating* factor in the [adverse employment] decision . . . ."); *see also Makky v. Chertoff*, 541 F.3d 205, 214–15 (3d Cir. 2008) (acknowledging that "[t]he *McDonnell Douglas* burden-shifting framework does not apply in a mixed-motive case in the way it does in a pretext case because the issue in a mixed-motive case is not whether discrimination played the dispositive role but merely whether it played 'a motivating part' in an employment decision," but nevertheless "hold[ing] . . . that a mixed-motive plaintiff has failed to establish a prima facie case of a Title VII employment discrimination claim if there is unchallenged objective evidence that s/he did not possess the minimal qualifications for the position plaintiff sought to obtain or retain," a requirement under the first step of *McDonnell Douglas*); *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 45 (1st Cir. 2009) ("[The plaintiff] presses her claim under two separate, though related, theories. She puts forth a 'mixed motives' claim . . . . and a traditional discrimination claim under the familiar *McDonnell Douglas* burden shifting scheme. Our decision here, however, is not dependent on analyzing [the plaintiff's] claim under each of these theories, because under both approaches, plaintiffs must present enough evidence to permit a finding that there was differential treatment in an employment action and that the adverse employment decision was caused at least in part by a forbidden type of bias." (internal quotation marks and footnotes omitted)).

simply as the "pretext" stage, even in mixed-motives cases. Indeed,

as we have previously recognized,

> courts often speak of the obligation on the plaintiff to prove that the employer's explanation is a "pretext for discrimination." We believe this is . . . a shorthand for the more complex concept that, regardless of whether the employer's explanation also furnished part of the reason for the adverse action, the adverse action was motivated in part by discrimination . . . .

*Henry*, 616 F.3d at 156. It becomes clear through analysis of our case

law that referring to this third step as the "pretext" stage in mixed-

motives cases is only a partial description of the proper inquiry, as a

Title VII plaintiff need not prove that the employer's stated reason

was *false*. A plaintiff instead need only show that the employer's

stated reason—even if true or factually accurate—was not the "real

reason," in the sense that it was not the *entire* reason due to a

coexisting impermissible consideration. *See id.* at 157 (observing that

"inaccuracy or incompleteness resulting from the [employer's] failure

to include the fact of the discriminatory motivation" in its stated

reason is "pretext"). While we use "pretext" as shorthand, we have

explained that a more complete characterization of a plaintiff's third-stage burden in mixed-motives cases is to produce "admissible evidence . . . show[ing] circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Walsh*, 828 F.3d at 75 (quoting *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)).

Relatedly, we have recognized that "[t]hough the plaintiff's ultimate burden may be carried by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, it may often be carried by reliance on the evidence comprising the prima facie case, without more," if that evidence is independently sufficient under step three of *McDonnell Douglas*. *Cronin*, 46 F.3d at 203 (internal quotation marks and citations omitted). In such cases, "the conflict between the plaintiff's evidence establishing a prima facie case and the employer's evidence of a

nondiscriminatory reason reflects a question of fact to be resolved by the factfinder after trial," *id.*, precluding summary judgment.

In sum, we reaffirm: To satisfy the third-stage burden under *McDonnell Douglas* and survive summary judgment in a Title VII disparate treatment case, a plaintiff may, but need not, show that the employer's stated reason was false, and merely a pretext for discrimination; a plaintiff may also satisfy this burden by producing other evidence indicating that the employer's adverse action was motivated at least in part by the plaintiff's membership in a protected class.

### B. Application to Bart's Case

Bart's case presents a relatively straightforward and instructional application of these principles. It is undisputed that Bart is a member of a protected class (women), is qualified for her position, and suffered an adverse employment action (termination). *See Bart*, 2023 WL 348102, at *4. And Bart's testimony about the remarks

Pappas allegedly made to her indicating gender-based stereotypes (the most recent of which was two months before her termination)—that "he didn't think women should be managers," J.A. 209–11, that being a manager was "too stressful" for women, and that women were "too sensitive to be managers," *id.* 217—is more than sufficient to meet her minimal first-stage burden of showing "circumstances [that] give rise to an inference of discrimination," *Vega*, 801 F.3d at 83 (internal quotation marks omitted). It is also undisputed that Golub has met its burden of articulating a legitimate, non-discriminatory reason for firing Bart: that she created inaccurate food logs on several occasions while under Pappas's management, most recently two days before her termination. The burden therefore shifts back to Bart to establish that Golub fired her due, at least in part, to her gender.

At this stage, the district court misapprehended our precedent by concluding as a matter of law that because Bart admitted to the behavior underlying Golub's stated reason for terminating her, she

34

failed to meet her third-stage burden. The district court noted that "although Plaintiff argues that Pappas'[s] alleged discriminatory attitudes may be 'sufficiently probative' as to the existence of gender-based discrimination, this argument does not address the Defendant's demonstration that Plaintiff was terminated for violating company policy regarding the handling and logging of food products." *Bart*, 2023 WL 348102, at *5. But Bart did not need to "address" Golub's showing that she took accountability for the conduct for which it claims it fired her, where she also produced sufficient evidence (which we credit at the summary judgment stage) to show that Golub fired her in part due to Pappas's gender bias. Those can both be true without absolving Golub of unlawful discrimination. It was therefore error to reason that Bart's "acknowledgement that the reason provided for her termination was factually accurate and valid under [Golub]'s policies and procedures[] is dispositive of the pretext issue." *Id.*

35

We therefore disagree with the district court's articulation of the legal standard because, as explained above, undisputed evidence that substantiates the legitimate, nondiscriminatory reason proffered by the employer at the second stage of *McDonnell Douglas* is not necessarily dispositive of the third-stage inquiry. That is because a plaintiff can satisfy that third-stage burden either by showing (1) that the employer's stated reason is false and merely a pretext for discrimination, or (2) that the employer's stated reason, although factually accurate, is not the only reason, because the employer's decision was also attributable to an impermissible consideration. *See Aulicino v. N.Y. City Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009) ("If the defendant meets this second burden, to defeat summary judgment . . . the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based *in whole or in part* on discrimination." (emphasis

added) (internal quotation marks omitted)); *see also Bentley v. AutoZoners, LLC*, 935 F.3d 76, 89–90 (2d Cir. 2019) (considering independent evidence of discrimination as cognizable to meet the pretext burden despite the employer having fired the plaintiff for a legitimate, non-discriminatory reason).

Here, Bart has adduced competent evidence, drawing reasonable inferences in her favor, that Pappas—"the actor most involved with [her] termination," J.A. 38—harbored gender-based bias against her.[4] Bart testified that Pappas made several remarks to

---

[4] On appeal, Golub attempts to minimize Pappas's role in Bart's termination by arguing that its "HR department fired [Bart]" and that Pappas "did not have authority to fire [her]." Appellee's Br. 13. Even putting aside Golub's failure to cite any record evidence regarding the extent of Pappas's authority to hire and fire, his lack of unilateral authority to terminate Bart's employment would not in itself defeat Golub's potential liability. "A Title VII plaintiff can succeed on a discrimination claim against an employer even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the decision-making process." *Naumovski*, 934 F.3d at 220 (internal quotation marks and alteration marks omitted); *see also Bickerstaff*, 196 F.3d at 450 ("We recognize that the impermissible bias of a single individual at *any stage* of the [decision-making] process may taint the ultimate employment decision in violation of Title VII." (emphasis added)). Here, Pappas repeatedly complained to HR about Bart's alleged shortcomings, and prepared Bart's termination documentation.

her, including close in time to the firing, insinuating that he believed that a man would perform better in Bart's role than a woman would. Pappas's comments are therefore not "stray remarks" insufficiently tied to the adverse action as to lack probative value. Instead, "[t]he comments alleged were (1) made repeatedly, (2) drew a direct link between gender stereotypes and the conclusion that [Bart is ill-suited for her position as a manager], and (3) were made by [a] supervisor[] who played a substantial role in the decision to terminate [Bart]. As such, they are sufficient to support a finding of discriminatory motive." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107,

Moreover, Golub expressly admitted before the district court that it was "undisputed that [Pappas was] the actor most involved with [Bart's] termination." J.A. 38; *see also id.* 224, 237 (admitting in its answer to the complaint in state agency proceedings that Pappas was involved in the decision-making process to fire Bart); Answer at 4, *Bart v. Golub Corp.*, No. 20-cv-404-KAD (D. Conn. Apr. 23, 2020), ECF No. 11 (admitting the same in its answer to the complaint in the federal court proceedings). Thus, reading the evidence in the light most favorable to Bart on Golub's summary judgment motion, a reasonable jury could determine that Pappas was meaningfully involved in the decision to terminate Bart's employment, even if Golub's HR department ultimately executed that decision.

124 n.12 (2d Cir. 2004); *see Rose v. N.Y. City Bd. of Educ.*, 257 F.3d 156, 162 (2d Cir. 2001).

Further, situations such as this where there was more than one decision-maker involved in the adverse action are often particularly suited for a motivating-factor analysis at the third stage of *McDonnell Douglas*. The alleged discriminatory intent harbored by Pappas, who the parties agree was involved in the decision to terminate Bart, might have infected the decision to terminate Bart even if Golub's stated reasons were accurate and sincerely held by others involved in the decision-making process. As we have previously explained,

> there are many circumstances in which a jury may justifiably find a prohibited discriminatory motivation notwithstanding a different explanation given by the employer in good faith without intent to deceive. One such circumstance exists where the adverse decision is made by two or more persons, some of whom are motivated by discrimination, while others are motivated by other reasons, and the employer's innocent explanation emanates from those who had no discriminatory motivation and were unaware of their colleagues' discriminatory motivation.

*Henry*, 616 F.3d at 157.

Therefore, Bart has met her burden at the summary judgment stage of producing competent evidence that Golub, through Pappas's involvement, terminated her employment in part based on her gender.

## III. Conclusion

Our holding today is not new. But it bears repeating due to the frequency of Title VII litigation, the infrequency of direct evidence of discrimination, and the history of Title VII's evolving causation standard. We hope today's decision erases any doubt about the appropriate standard for the third step of *McDonnell Douglas* in a Title VII case alleging disparate-treatment discrimination.

In sum, we hold as follows:

(1) To survive summary judgment on a Title VII disparate treatment claim, a plaintiff may, but need not, show at the third stage of the *McDonnell Douglas* burden-shifting test that the employer's stated justification for its adverse action was nothing but a pretext for discrimination; a plaintiff may

alternatively satisfy this burden by adducing evidence that, even if the employer had mixed motives, the plaintiff's membership in a protected class was at least one motivating factor in the employer's adverse action.

(2) Here, Bart has adduced sufficient evidence of discriminatory intent by a supervisor involved in her termination—namely, her testimony that her supervisor made several remarks to her as recently as two months before her termination indicating that women were unsuited to be managers—to defeat Golub's motion for summary judgment and submit the ultimate issue of intentional discrimination to a fact finder.

We therefore VACATE the district court's judgment and REMAND for proceedings consistent with this opinion.

41