*Flanagan v. Trader Joe's East, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of January, two thousand twenty-five.

PRESENT:
> DENNY CHIN,
> RICHARD J. SULLIVAN,
> STEVEN J. MENASHI,
> *Circuit Judges*.

_____

TRACY FLANAGAN,

> *Plaintiff-Appellant*,

> v.                                                                 No. 24-675

TRADER JOE'S EAST, INC.,

> *Defendant-Appellee*.

_____

For Plaintiff-Appellant:        JOSHUA R. GOODBAUM (Meaghan C. Kirby, *on the brief*), Garrison, Levin-Epstein, Fitzgerald & Pirrotti, P.C., New Haven, CT.

For Defendant-Appellee:        JEFFREY R. BABBIN, Wiggin and Dana LLP, New Haven, CT (Anjali S. Dalal, Wiggin and Dana LLP, New York, NY; Mary A. Gambardella, Caroline B. Park, Wiggin and Dana LLP, New Haven, CT, *on the brief*).

Appeal from a judgment of the United States District Court for the District of Connecticut (Vernon D. Oliver, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the February 9, 2024 judgment of the district court is **AFFIRMED**.

Tracy Flanagan appeals from the district court's grant of summary judgment in favor of her former employer, Trader Joe's East, Inc. ("Trader Joe's"), on her claims that she was fired from her position as a Regional Vice President ("RVP") on account of her sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 *et seq.* We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party. *See Bentley v. AutoZoners, LLC*, 935 F.3d 76, 85 (2d Cir. 2019). Summary judgment is appropriate only "where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (internal quotation marks omitted). A dispute is "genuine" when the evidence on the issue "would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016).

We apply the familiar three-step *McDonnell Douglas* burden-shifting framework to Flanagan's Title VII and CFEPA claims to determine whether she has shown sufficient circumstantial evidence of discrimination to survive summary judgment. *See Bart v. Golub Corp.*, 96 F.4th 566, 569 (2d Cir. 2024) (applying *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973) to plaintiff's Title VII and CFEPA claims). To start, the plaintiff must "establish a *prima facie* case of discrimination by showing that (1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Id.* at 570

3

(internal quotation marks omitted). If the plaintiff has established her *prima facie* case, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its adverse action." *Id.* (internal quotation marks omitted). If the employer articulates such a reason, then the burden shifts back to the plaintiff to show at the third step either that "the employer's stated justification for its adverse action was nothing but a pretext for discrimination," or that, "even if the employer had mixed motives, the plaintiff's membership in a protected class was at least one motivating factor in the employer's adverse action." *Id.* at 578.

In granting summary judgment for Trader Joe's, the district court concluded that Flanagan failed to establish a *prima facie* case of sex discrimination at step one. The district court additionally concluded that Trader Joe's identified a legitimate, nondiscriminatory reason for Flanagan's termination and that Flanagan failed to present evidence sufficient to permit a reasonable juror to conclude that Trader Joe's stated reason was pretextual. Even assuming that Flanagan established a *prima facie* case at step one, we agree with the district court that Trader Joe's met its burden at step two and that Flanagan failed to carry her burden at step three of

4

the *McDonnell Douglas* framework.   Accordingly, we affirm the district court's grant of summary judgment in favor of Trader Joe's.

It is undisputed that Trader Joe's identified a legitimate, nondiscriminatory reason for Flanagan's termination "[b]ased on [her] recent performance and [her] decision to take vacation during" a critical period when Trader Joe's struggled to deal with the consequences of the COVID-19 outbreak in mid-March 2020. J. App'x at 492.   The record evidence shows that Trader Joe's fired Flanagan after she decided to leave the country for a scheduled vacation in Cancun, Mexico on March 16, 2020 – just three days after her new interim supervisor, Executive Vice President Ben Myers, had directed RVPs on a March 13 conference call to "minimize travel" in light of the escalating COVID-19 pandemic.   J. App'x at 210**.** Flanagan, who as an RVP was responsible for overseeing Trader Joe's stores in Connecticut and New York, herself referred to this period in mid-March 2020 as "Coronavirus craziness."   *Id.* at 207.   During that time, Trader Joe's employees were considered "essential workers," and their stores faced substantially increased customer demand and employee unrest, as the situation was "escalating" and "even changing by the day."   *Id.*

On the night before her departure, Flanagan emailed Myers as a "courtesy" to "let [him] know that [she was] away [the] next week" for a vacation that had been approved "long before the virus outbreak." *Id.* at 65, 211. While acknowledging that the timing was "not ideal," she stated that she had decided "to move forward with the trip" after being "out voted" by her family. *Id.* at 211. Although Myers voiced no objection to the trip in his response to Flanagan, he nevertheless shared the email with Trader Joe's President of Stores Jon Basalone. After reviewing the email and speaking with Myers, as well as Trader Joe's General Counsel Kathryn Cahan and Vice President of Human Resources Laurie Mead, Basalone decided to terminate Flanagan's employment. In their depositions, Myers, Basalone, and Mead each testified that, in their view, Flanagan's eleventh-hour email and choice to proceed with her vacation demonstrated a failure of leadership and judgment at a critical time for the company.

Flanagan's decision to proceed with her vacation came on the heels of a written warning she received in December 2019 for failing to notice that an assistant manager in one of her stores had embezzled more than $75,000 over an eighteen-month period. In that warning, Flanagan's then-supervisor Ed Seeker

6

wrote that "it is difficult to understand how [Flanagan] missed this situation for 18 months" and that she had "failed to use good situational leadership to help a newly promoted [manager] learn how to run her store effectively." *Id.* at 91. And in Flanagan's January 2020 annual performance review, Seeker identified "a few large failures that gave [him] concern" and explained that Flanagan's lack of "situational leadership was the root cause of her mistakes." *Id.* at 87.

Flanagan fails to raise a genuine dispute that the reason Trader Joe's proffered for her termination was pretext for sex discrimination or that sex discrimination was otherwise a motivating factor in her termination. Although she makes much of the fact that she had received Seeker's permission to take the vacation in January or February 2020 and again on March 4, she overlooks the change in circumstances caused by the COVID-19 pandemic, which made employees at grocery stores like Trader Joe's "essential workers," *id.* at 207, and prompted Myers – now her supervisor – to issue his March 13 directive to minimize travel. Moreover, even if we were to construe Myers's response to her March 15 email as an endorsement of her travel, Flanagan has not adduced sufficient evidence to permit a jury to find that Basalone's decision to terminate her employment was based even in part on animus toward her sex. *See Weinstock*

*v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (explaining that, "[t]o get to the jury, it is not enough to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination" (alterations accepted and internal quotation marks omitted)).

Equally unpersuasive is Flanagan's argument that a male RVP was not terminated despite also taking a vacation in March 2020. It is true that "[a] showing that similarly situated employees" outside the protected group "received more favorable treatment" can be evidence that the employer's proffered reason is pretextual. *Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000). But, as a threshold matter, the plaintiff must present evidence from which a reasonable factfinder could conclude that the comparator employees were indeed "similarly situated in all material respects" – that is, that they "were subject to the same workplace standards" as the plaintiff and that "the conduct for which the employer imposed discipline was of comparable seriousness." *Id.* at 39–40 (internal quotation marks omitted). "The determination that two acts are of comparable seriousness requires . . . an examination of the context and surrounding circumstances in which those acts are evaluated." *Id.* at 40.

8

Here, Flanagan fails to make that showing. Among other distinctions, the male RVP traveled – and did so domestically, not internationally – before the World Health Organization had declared COVID-19 a pandemic on March 11, 2020 and before the March 13, 2020 conference call directing RVPs to minimize travel. Furthermore, the record contains no evidence to suggest that the male RVP had received a written warning or a negative performance review in the months immediately preceding his travel. *See Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001) (noting that the circumstances surrounding the "similarly situated" employees "need not be identical [to the plaintiff's], but there should be a reasonably close resemblance of facts and circumstances"); *see also, e.g.*, *Howell v. Montefiore Med. Ctr.*, 675 F. App'x 74, 75 (2d Cir. 2017) (considering disciplinary history in evaluating whether a comparator was similarly situated).

Considering all of the evidence, we conclude that no reasonable factfinder could conclude on this record that the reason proffered by Trader Joe's was a pretext for sex discrimination or that sex discrimination was otherwise a motivating factor in Flanagan's termination. The district court therefore did not err in granting summary judgment on her Title VII and CFEPA discrimination claims.

9

We have considered Flanagan's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court