24-1614
*Valerio v. Metropolitan Transit Authority*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of March, two thousand twenty-five.

PRESENT:
> REENA RAGGI,
> BETH ROBINSON,
> ALISON J. NATHAN,
> > *Circuit Judges.*

———————————————————————————

KISSAIRIS VALERIO,

> *Plaintiff-Appellant,*

> > v.                                                     No. 24-1614

METROPOLITAN TRANSPORTATION AUTHORITY,

> *Defendant-Appellee.*

———————————————————————————

FOR APPELLANT:                               Alan E. Wolin, Wolin & Wolin, Jericho, NY

FOR APPELLEE:                              Brian Confino, Metropolitan
                                           Transportation Authority Law
                                           Department, New York, NY

Appeal from a judgment of the United States District Court for the Southern District of New York (Cote, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on May 21, 2024, is **AFFIRMED**.

Plaintiff-Appellant Kissairis Valerio appeals the district court's grant of summary judgment to Defendant-Appellee Metropolitan Transportation Authority ("MTA") with respect to her claims of unlawful employment discrimination. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

In April 2021, the MTA offered Valerio a position as a Police Officer with the Metropolitan Transportation Authority Police Department ("MTAPD"). The MTAPD uses the New York Police Department Academy (the "Academy") to train its recruits. Each recruit enters a six-month training at the Academy. During Valerio's training period, MTAPD Police Officer Julie Cutrone acted as

the NYPD Liaison at the Academy. In this role, Cutrone was responsible for supervising, running, and administering the recruits' police training classes.

In July 2021, Detective Sergeant John Echavarria issued Valerio a Letter of Instruction for what he perceived to be an insubordinate attitude. At the same time, Echavarria provided a memo to MTAPD Captain Matthew Taffner explaining his reasons for issuing the Letter of Instruction and informing Taffner that he "advised PO Cutrone to have PPO Valerio removed as assistant company Sergeant." App'x at 275. Valerio believes that Cutrone removed her as company sergeant.

In October 2021, Cutrone gave Valerio permission to leave to see a dentist about her fractured tooth. The parties dispute what happened next, but all agree that before leaving the Academy, Valerio did not secure equipment then in her possession, including her MTAPD-issued firearm box, two high capacity law enforcement issue firearm magazines, and 34 rounds or more of ammunition; that she did not physically return to retrieve these items; and that Cutrone ended up taking possession of the equipment and securing it. Valerio testified in her deposition that she put the equipment in her recruit bag before she left and

someone else removed it from the bag when she went to the bathroom before she left for the dentist.

However, in the memo she wrote at Cutrone's instruction three days after the incident, Valerio described what happened with her equipment as follows:

> On Friday October 22nd, 2021 I left at approximately 1205 hours due to a dental emergency. Prior to me leaving . . . I put my box which had 34 rounds and 2 empty high capacity magazines in them on top of my recruit bag. At some point . . . PO Cutrone instructed for the boxes to be stacked on the side of the room so they wouldn't be in the way . . . . At that point my box was no longer in my possession and moved to the side of the room along with everyone else's gun box. At approximately 1205 hours I asked PO Cutrone if I could leave early due to a dental emergency. . . . At that point I went to recruit ops to sign out. As I was rushing to my car I was making phone calls to various Emergency Dentists to schedule a same day appointment. As soon as I exited the building and went to my vehicle, I realized that my gun box was not in my recruit bag, at which point I sent an immediate notification to the group chat asking for someone to secure the gun box for me. I was then told that PO Cutrone requested the box from my coworkers so she could safeguard it. At that point I assumed that my gun box was secured and safeguarded and that the notification was no longer needed.

App'x at 388.

In December 2021, the MTAPD chief issued Valerio a Notice of Intent to Discipline ("NID"). The NID centered on the October 2021 incident and charged

Valerio with violations of the MTAPD Manual and NYPD Recruit Officer Handbook for not "immediately returning into the Academy to attempt to locate and secure" her equipment after she realized it was missing, and instead, "sen[ding] a message to a group chat asking for someone to safeguard the items," then leaving the Academy and "not pursu[ing] the matter any further for a few days following the incident." App'x at 390.

In January 2022, Acting MTAPD Chief Gary Beahan received a call from MTA Labor Relations about Valerio's NID. After reading the NID, Beahan contacted Echavarria about Valerio. Echavarria told Beahan about the Letter of Instruction he issued to Valerio and gave him a copy of it. He also described the October 2021 incident. Beahan followed up with MTA Labor Relations, which recommended that Valerio be terminated. In addition, Beahan recalls having some discussion about Valerio with Echavarria and Cutrone, though he doesn't recall whether that was before or after he received the NID. Ultimately, Beahan terminated Valerio's employment with MTAPD in February 2022.

Subsequently, Valerio, who is female, Black, and Hispanic (of Dominican descent) brought several claims against the MTA for discrimination based on her race, gender, and national origin pursuant to Title VII of the Civil Rights Act of

5

1964, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). The MTA moved for summary judgment, which the district court granted.

We review the district court's grant of summary judgment without deference to the district court's reasoning. *Byrne v. Rutledge*, 623 F.3d 46, 52 (2d Cir. 2010). If, construing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact then the movant is entitled to judgment as a matter of law. *Id.*

When, as here, a plaintiff relies on circumstantial evidence of discrimination in a disparate treatment claim under Title VII we use a burden-shifting framework to evaluate whether the plaintiff has sufficient evidence to survive summary judgment. *Bart v. Golub Corporation*, 96 F.4th 566, 569 (2d Cir. 2024). First, to establish a *prima facie* case[1] of discrimination, the plaintiff must show, among other things, that "the circumstances give rise to an inference of discrimination." *Bart*, 96 F.4th at 570.[2] If the plaintiff does so, then "the burden

---

[1] A *prima facie* case is a one that is sufficient to establish a plaintiff's claim "unless disproved or rebutted." *Prima Facie*, BLACK'S LAW DICTIONARY (12th ed. 2024).

[2] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

shifts to the employer to articulate a legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* Upon that showing, the burden shifts back to the plaintiff to proffer evidence creating a genuine dispute as to whether the defendant's stated reason is pretextual. *Id.*

Here, Valerio seeks to prove that her termination resulted from discrimination in two ways: First, she contends that Cutrone bore a discriminatory animus against her, and that she was terminated as a result of Cutrone's influence. Second, she argues that discriminatory animus can be inferred from the fact that male, Caucasian, non-Hispanic probationary officers were not terminated by the MTAPD despite committing worse infractions. We conclude that Valerio has not shown a *prima facie* case under either theory.

Her first argument relies on a so-called "cat's paw theory," pursuant to which an employer may be liable for adverse actions influenced by the discriminatory animus of a supervisor who did not personally make the ultimate employment decision. *See Vasquez v. Empress Ambulance Service, Inc.*, 835 F.3d 267, 271–72 (2d Cir. 2016). But even if Valerio had sufficient evidence that Beahan's decision to terminate her was driven in substantial part by Cutrone, she has not mustered evidence that *Cutrone*, who is herself female and Hispanic (of

Dominican descent), but is not Black, bore animus against Valerio *on the basis of gender, race, or national origin.*

Valerio offers no direct evidence that Cutrone was motivated by her gender, race, or national origin, but asserts that Cutrone treated two other Hispanic women disparately by delaying their return to the training program after they were cleared to work following injuries so that they ultimately had to repeat the program. But her evidence to support this contention relies on hearsay, and she offers no details regarding their circumstances and no evidence as to whether other non-Hispanic male recruits faced similar delays.

Valerio's alternative argument fares no better. Disparate treatment, "that is, treat[ing] [the plaintiff] less favorably than a similarly situated employee outside [the plaintiff's] protected group" is sufficient to give rise to an inference of discriminatory intent. *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). Valerio offers no admissible evidence to support her claim of disparate treatment. *See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) (holding that a party opposing summary judgment cannot rely on inadmissible evidence "absent a showing that admissible evidence will be available at trial"); *cf. Kee v. City of New York*, 12 F.4th 150, 170 (2d Cir. 2021).

Valerio testified that a number of male, Caucasian, non-Hispanic probationary officers committed worse infractions but were not terminated. But her testimony was not based on any personal knowledge with respect to nearly all of the officers and incidents she cites, so her evidence about them would not be admissible in court. *See* Fed. R. Evid. 602. Likewise, her testimony that an officer in her recruitment class at the Academy was docked pay but not fired after he lost his identification and MTA-issued shield is based on inadmissible hearsay—namely, his messages to a group chat. *See* Fed. R. Evid. 801. In short, Valerio has not shown that admissible evidence of disparate treatment would be available at trial. *See Burlington Coat Factory Warehouse Corp.*, 769 F.2d at 924.

Valerio's claims under the NYCHRL require an independent analysis where we construe its provisions "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). "The NYSHRL historically utilized the same standard as Title VII, but it was amended in 2019 to align with the NYCHRL's more liberal pleading standard." *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122–23 (2d Cir. 2024); *see Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 451 (2024) (construing NYSHRL and NYCHRL claims

together).  We thus discuss both claims together while recognizing that they are separate and independent claims.  *Mihalik*, 715 F.3d at 109.

To establish a discrimination claim under the NYCHRL or NYSHRL, Valerio must show "by a preponderance of the evidence that she has been treated less well than other employees because of her" race, gender, or national origin.  *Id.* at 110.  "[S]ummary judgment is appropriate if the record establishes as a matter of law that discrimination . . . played no role in the defendant's actions."  *Ya-Chen Chen v. City University of New York*, 805 F.3d 59, 76 (2d Cir. 2015).

Valerio's NYCHRL and NYSHRL claims fail for the same reason as her federal claims: she has not produced any admissible evidence of direct unlawful discriminatory intent or disparate treatment.  Because she has not proffered evidence showing that she was treated less well *because of* her race, gender, or national origin, MTA is entitled to summary judgment.

\* \* \*

For the above reasons, the District Court's judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10