Knox v. CRC Management Co.

# In the
# United States Court of Appeals
# for the Second Circuit

August Term 2023
Argued:  February 12, 2024
Decided: April 9, 2025

No. 23-121

NATASHA KNOX,
*Plaintiff-Appellant*,

v.

CRC MANAGEMENT CO., LLC, CLEAN RITE CENTERS-3533 BOSTON RD., LLC, 4352
BRONX BLVD. LAUNDROMAT, LLC, CECILIA ASHMEADE, KEN FERRIS,
*Defendants-Appellees*.[*]

Appeal from the United States District Court
for the Southern District of New York
No. 20-cv-4073, Edgardo Ramos, *Judge*.

Before:  KEARSE, PARK, and PÉREZ, *Circuit Judges*.

Natasha Knox appeals from a summary judgment dismissing her suit

against her former employer and two of her former supervisors.  Knox alleges

discriminatory and retaliatory termination, a hostile work environment, refusal to

---

[*] The Clerk of Court is respectfully directed to amend the caption accordingly.

accommodate her disability, and unpaid wages. The district court found that Knox had failed to adduce sufficient evidence to survive summary judgment on any of her claims. We disagree. Reviewing the record in the light most favorable to Knox, including Knox's own testimony and sworn affidavit, we cannot conclude that any of her claims were so lacking in support as to prevent a reasonable jury from finding in her favor. Accordingly, we **VACATE** the district court's judgment and **REMAND** for further proceedings on each of Knox's claims.

STEPHEN BERGSTEIN, Bergstein & Ullrich, New Paltz, NY, *for Plaintiff-Appellant.*

JEREMI L. CHYLINSKI, Gordon & Rees, LLP, New York, NY, *for Defendants-Appellees.*

MYRNA PÉREZ, *Circuit Judge*:

Natasha Knox appeals from a summary judgment dismissing her suit against her former employer and two of her former supervisors. Knox alleges discriminatory and retaliatory termination, a hostile work environment, refusal to accommodate her disability, and unpaid wages. The district court found that Knox had failed to adduce sufficient evidence to survive summary judgment on any of her claims. We disagree. Reviewing the record in the light most favorable

2

to Knox, including Knox's own testimony and sworn affidavit, we cannot conclude that any of her claims were so lacking in support as to prevent a reasonable jury from finding in her favor. Accordingly, we **VACATE** the district court's judgment and **REMAND** for further proceedings on each of Knox's claims.

## BACKGROUND

### I. Factual Background

From December 2018 until her termination in April 2019, Natasha Knox, a Black woman of Jamaican descent, worked as a customer service attendant at three Clean Rite laundromats in the Bronx.[1] Her job included tending to customers, washing and folding laundry, and keeping the equipment clean. While Knox worked mainly at Clean Rite's location on White Plains Road, she would occasionally pick up extra shifts at two other locations.

In February 2019, Knox began having problems with Cecilia Ashmeade, her supervisor at the White Plains Road location. Ashmeade would make derogatory comments to Knox on a daily basis, telling her that she was "too 'hood' and

---

[1] As we must at the summary-judgment stage, we view the record in the light most favorable to the non-movant, Knox, and describe the facts accordingly. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). We use "Clean Rite" to refer collectively to the three company defendants, though we express no view—since the issue has not been presented—as to whether any of them would be entitled to summary judgment on the basis of their corporate separateness.

'ghetto' to work" for Clean Rite and that "the Yankee in [her] makes [her] timid." J. App'x at 237 ¶ 5. Knox reported these comments to her District Lead, Vincent Butler, who took no action. The following month, Butler was replaced by Kenneth Ferris, who began routinely making derogatory comments of his own. In one instance, he told Knox that she "looked like Aunt Jemima." *Id.* at 238 ¶ 15. In another, he "criticized [her] for 'talking Jamaican' when [she] got 'upset.'" *Id.* at 238 ¶ 16.

In early March, Knox visited her doctor regarding a broken thumb she had sustained in a car accident about a month earlier. Since the accident, Butler had allowed Knox to perform lighter duties, but she continued to experience pain. Her doctor gave her a new hand brace and instructed her not to lift more than 25 pounds. Knox told Ashmeade about her doctor's instruction and asked that she not be required to lift more than 25 pounds during her shifts. Ashmeade responded that Knox "shouldn't have this job" if she needed an accommodation, and she continued to require Knox to do work that involved lifting more than 25 pounds. Knox told her Regional Leader, Neville Baptiste, about Ashmeade's derogatory comments and her refusal to accommodate Knox's thumb injury. With respect to her request for an accommodation, Baptiste told Knox, "[W]e might

4

need to have a conversation if you can't do your job." J. App'x at 238 ¶ 12. Knox also met with Ferris to discuss Ashmeade's derogatory comments.

Around that same time, Knox complained to Clean Rite that she had not been paid for the extra shifts she worked at two other Clean Rite locations. She filed a formal complaint with Ferris, who never got back to her.

On April 14, after taking a taxi to work, Knox reimbursed herself by taking fifteen dollars from the cash register and putting her taxi receipt in its place. Knox testified that Clean Rite would pay employees' taxi fare, and Ferris had given Knox permission to reimburse herself from the register as long as she left a receipt. But the following day, Knox's new supervisor, Ashley Peguero, confronted her and asked her to return the money. Knox declined, explaining that she was owed taxi fare and had not acted contrary to company policy. Peguero informed Ferris, who fired Knox three days later, citing her removal of cash from the register and her refusal to return it.

## II. Procedural History

Knox sued Clean Rite, Ashmeade, and Ferris, alleging discriminatory and retaliatory termination, a hostile work environment, refusal to accommodate a

5

disability, and unpaid wages. She also alleged that Ashmeade and Ferris aided and abetted Clean Rite's discrimination and retaliation.

Clean Rite moved for summary judgment. Knox moved to strike the defendants' answer with respect to Ashmeade and Ferris, who had since failed to appear, and requested that default judgment be entered against them. The district court granted summary judgment for Clean Rite, dismissed the claims against Ashmeade and Ferris sua sponte, and denied Knox's motion as moot. Knox timely appealed.

## DISCUSSION

"We review the district court's grant of summary judgment *de novo*, construing the facts in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021). In doing so, we are "required to consider the record as a whole" and "to disregard all evidence favorable to the moving party that a jury would be entitled to disbelieve." *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 248 (2d Cir. 2024).

We conclude that Knox has adduced sufficient evidence to survive summary judgment on all of her claims against Clean Rite. With respect to her

6

claims against Ashmeade and Ferris, we vacate their dismissal and remand for the district court to consider how best to proceed in light of their failure to appear.

## I.  Racial and National-Origin Discrimination

Knox alleges discriminatory termination, retaliation, and a hostile work environment, bringing claims under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law.  Because there are genuine and material factual disputes as to each theory, summary judgment on these claims is not warranted.

### A. Discriminatory Termination

Knox alleges that Clean Rite's decision to fire her was motivated at least in part by her race or national origin.  To succeed on this theory under § 1981, Title VII, and the New York State Human Rights Law, she must satisfy the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).[2]  *See Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  Meeting her burden under this framework would also satisfy her burden under the more lenient New York City

---

[2] Knox does not present direct evidence of discriminatory intent, in which case *McDonnell Douglas* burden shifting would be unnecessary.  *See Porter v. Dartmouth-Hitchcock Med. Ctr.*, 92 F.4th 129, 149 (2d Cir. 2024) ("The *McDonnell Douglas* test is *inapplicable* where the plaintiff presents *direct* evidence of discrimination, *e.g.*, that the employer's motivation was discriminatory on its face." (internal quotation marks omitted)).

7

Human Rights Law. *See Bennett v. Health Mgmt. Sys., Inc.*, 92 A.D.3d 29, 936 N.Y.S.2d 112, 121–22 (1st Dep't 2011).

Under the *McDonnell Douglas* framework, Knox must first show that (1) she belonged to a protected class, (2) she was qualified for her job, (3) she was fired, and (4) her firing took place "under circumstances giving rise to an inference of discriminatory intent." *Brown*, 673 F.3d at 150 (internal quotation marks omitted). If she meets this prima facie burden, "a presumption of discriminatory intent arises," and the burden shifts to Clean Rite "to articulate a legitimate, non-discriminatory reason for" firing her. *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (internal quotation marks omitted). If it does so, then the burden shifts back to Knox, who must show that Clean Rite's justification was pretextual or that her firing "was motivated at least in part by [her] membership in a protected class." *Bart v. Golub Corp.*, 96 F.4th 566, 576 (2d Cir. 2024); *see also Bennett*, 936 N.Y.S.2d at 121.

Clean Rite argues that summary judgment was warranted because Knox failed to establish a genuine factual dispute as to whether Clean Rite's reason for firing her was discriminatory. We disagree.

8

At a minimum, a jury could reasonably infer that Knox's race or national origin played at least some part, even if not the only part, in her firing. *See Bart*, 96 F.4th at 576; *Bennett*, 936 N.Y.S.2d at 121. First, Knox adduced evidence that Ferris had made discriminatory comments to her not long before firing her, telling her that she "looked like Aunt Jemima" and "criticiz[ing] [her] for 'talking Jamaican' when [she] got 'upset.'" J. App'x at 238 ¶¶ 15, 16. Second, neither Ferris nor his predecessor, Butler, had taken any action in response to Knox's complaint about racial harassment by Ashmeade. This is sufficient evidence to make out a prima facie case of discriminatory discharge.

Clean Rite asserts that it fired Knox for a legitimate reason: she took fifteen dollars from its cash register and refused to give it back. But Knox testified at her deposition, and asserted in a sworn declaration, that Clean Rite employees were permitted to take cash from the register to pay their taxi fare so long as they left a receipt, which she did. Knox also said that other employees "engaged in this practice openly as well with no discipline." J. App'x at 239 ¶ 20. If Clean Rite previously gave its employees permission to take cash from the register for their cab rides, as we must assume to be true for purposes of summary judgment, then

it had no reason to demand that Knox return the money. Neither taking the money nor refusing to return it would be a legitimate reason for Knox's termination.

Presented with this evidence of pretext alongside the evidence making up Knox's prima facie case, including racial comments made by Ferris, who fired her, a reasonable jury could determine that Knox was terminated because of her race or national origin.

In reaching the opposite conclusion, the district court erroneously found that "a plaintiff's self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." *Knox v. CRC Mgmt. Co., LLC*, No. 20-cv-4073, 2023 WL 22605, at *10 (S.D.N.Y. Jan. 3, 2023) (internal quotation marks omitted). To the contrary, "[a]t summary judgment, [a plaintiff is] entitled to rely on his own testimony to establish his . . . claim." *Rentas v. Ruffin*, 816 F.3d 214, 221 (2d Cir. 2016); *see also Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019) (a "plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact"). Testimony, of course, includes sworn statements made in depositions or declarations under the penalty of perjury. *See* 28 U.S.C. § 1746; Fed. R. Civ. P. 56(c)(4). "There is nothing in [Federal Rule of Civil Procedure 56(c)] to suggest that nonmovants' affidavits

10

alone cannot—as a matter of law—suffice to defend against a motion for summary judgment." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998). And "[t]o hold . . . that the nonmovant's allegations of fact are (because 'self-serving') insufficient to fend off summary judgment would be to thrust the courts—at an inappropriate stage—into an adjudication of the merits." *Id.* To the extent the district court's analysis discounted Knox's sworn statements for being "self-serving," doing so was error. [3]

## B. Retaliatory Termination

Knox also alleges that Clean Rite fired her in retaliation for asserting her civil rights. Federal and state-law retaliation claims are "subject to the same standards" as one another, *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023), including the *McDonnell Douglas* burden-shifting framework described earlier, *see Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015) (§ 1981 and Title VII); *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (New York State Human

---

[3] "Of course, if the nonmovant's affidavit fails to comply with Federal Rule of Civil Procedure 56(e), in that it is conclusory or not based on the affiant's personal knowledge, the affidavit would be insufficient to defend against a motion for summary judgment." *Danzer*, 151 F.3d at 57 n.5. Nor may a party "create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 482 (2d Cir. 2014) (internal quotation marks omitted); *see also Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014) ("[F]actual issues that a party creates by filing an affidavit crafted to oppose a summary judgment motion that contradicts that party's prior testimony are not 'genuine' issues for trial."). But neither situation applies here.

Rights Law). To establish a prima facie case of retaliatory termination, Knox must show (1) that she engaged in activity protected under the relevant statute; (2) that Clean Rite knew about this activity; (3) that Clean Rite fired her; and (4) "that there was a causal connection between [her] protected activity and [her firing]." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). If Clean Rite can then "articulate some legitimate, non-retaliatory reason for" firing her, Knox must then prove that her protected activity "was a 'but-for' cause of" her firing, which she can do by showing that Clean Rite's proffered reason is pretextual. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845–46 (2d Cir. 2013). As with her discriminatory-termination claims, if Knox meets her burden on her federal and state-law retaliation claims, she will also meet her burden under the more permissive New York City Human Rights Law. *See Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 75 (2d Cir. 2015).

We conclude that Knox has adduced sufficient evidence to defeat summary judgment as to each of her burdens. As to the first and second elements of her prima facie case, Knox testified that she complained to her managers—including Neville Baptiste, who (according to Clean Rite) directed Knox's termination—about racial harassment and Ashmeade's refusal to accommodate her injured

thumb. "[M]aking complaints to management" about workplace discrimination qualifies as protected activity under the first element. *Littlejohn*, 795 F.3d at 317 (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)). And knowledge of a complaint by the person who directed an adverse employment action is sufficient to meet the second. *See Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 147-48 (2d Cir. 2010).

As to the third prima facie element, the parties do not dispute that Clean Rite fired Knox. As to the fourth element, "[a] plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." *Tafolla*, 80 F.4th at 125–26 (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010)). Knox stated in her declaration that she last complained to management about discrimination around mid-March 2019, and the parties agree that Clean Rite fired her on April 18, 2019. Interpreting the entire record in the light most favorable to Knox, we find that a rational jury could infer a causal connection from the roughly one-month period between Knox's protected activity and her firing. *Cf. Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252

13

F.3d 545, 555 (2d Cir. 2001) (holding that a four-month period was sufficient); *Banks*, 81 F.4th at 277 (noting that we have held "several months" to be sufficient).

Knox's burden at the next stage—after Clean Rite has articulated a non-retaliatory reason for her firing—is somewhat higher. To survive summary judgment at this stage, she cannot rely solely on temporal proximity. *Zann Kwan*, 737 F.3d at 847. Here, however, Knox also presented other evidence to support her argument that the employer's proffered reason for the termination was pretextual. As with Knox's discrimination claims, there is sufficient record evidence that Clean Rite's proffered reason—that Knox took cash from the register and refused to return it—was mere pretext. Combined with the temporal proximity between Knox's complaints and her firing, this evidence would allow a rational jury to conclude that Clean Rite would not have fired her but for her protected activity. *See id.* at 846 ("A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action. From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason.").

14

Having adduced evidence on each element of her retaliation claims, Knox is entitled to take those claims to a jury. Summary judgment was therefore inappropriate.

## C. Hostile Work Environment

Knox also asserts a hostile-work-environment theory under § 1981, Title VII, the New York State Human Rights Law, and the New York City Human Rights Law. Here too, satisfying her burden on her federal and state-law claims, which are again subject to similar standards, will also satisfy her burden on her city-law claim. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) (§ 1981 and Title VII); *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006) (New York State Human Rights Law); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (New York City Human Rights Law).

"To establish a hostile work environment claim under [federal or New York law], a plaintiff must first produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 68 (2d Cir. 2023) (internal quotation marks omitted). Under this standard, racially offensive comments by a coworker can create a

15

hostile work environment, as can offensive comments based on a person's ancestry or national origin. *See Whidbee*, 223 F.3d at 70. Under federal and state law, "[t]o withstand summary judgment, a plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Id.* at 69 (internal quotation marks omitted); *see also Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) ("For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." (alteration adopted) (citation and internal quotation marks omitted)). If a rational jury could find either to be the case, then summary judgment must be denied.

Knox has shown a genuine factual dispute under this standard. In her sworn declaration, she described being subjected to daily harassment from her supervisor: "Defendant Ashmeade began making daily criticisms that I was too 'hood' and 'ghetto' to work at Clean Rite. Defendant Ashmeade also criticized me by saying 'the Yankee in you makes you timid,' a reference to my national origin." J. App'x at 237 ¶ 5. Knox also attested that Ferris, her District Lead, would

16

"routinely mak[e] derogatory comments concerning [her] race and nationality."
*Id.* at 238 ¶ 14. She described two examples: "In or around Mid-March 2019, I arrived at work wearing a scarf and was informed by Defendant Ferris that I 'looked like Aunt Jemima,'" *id.* ¶ 15; and "[i]n or around late March, Defendant Ferris criticized me for 'talking Jamaican' when I got 'upset,'" *id.* ¶ 16.

Drawing all reasonable inferences in her favor, a rational jury could conclude that daily and routine comments such as these "were sufficiently continuous and concerted" to have worsened the conditions of Knox's employment. *Williams*, 61 F.4th at 69 (internal quotation marks omitted); *see also Torres v. Pisano*, 116 F.3d 625, 632 (2d Cir. 1997) (a hostile work environment is actionable under Title VII when harassment "is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse").

In reaching the opposite conclusion, the district court found that daily comments such as these, even though "deplorable," were not actionable because they lasted only two months and did not involve "any physical altercations with [a] coworker." *Knox*, 2023 WL 22605, at *13 (internal quotation marks omitted). That conclusion is out of step with our precedents. In *Whidbee*, for example, we

17

found that "a stream of racially offensive comments over the span of two to three months" was sufficient to defeat summary judgment. 223 F.3d at 70; *see also id.* at 71. The plaintiffs there described seven separate incidents in which the same coworker made offensive comments, usually directed at the plaintiffs' other coworkers, and which did not accompany any physical altercations. *See id.* at 66–68; *cf. Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 75–76 (2d Cir. 2019) ("On Fox's evidence at this stage, we hold, a reasonable fact finder could conclude that the 'hut-hut-hike' comments made for months by co-workers when Fox experienced verbal tics were sufficiently severe and pervasive to change the conditions of Fox's employment."). Here, Knox testified that offensive comments were made to her on a daily basis.[4]

In considering whether racially offensive comments constitute a hostile work environment, a jury considers their "quantity, frequency, and severity." *Schwapp*, 118 F.3d at 111 (internal quotation marks omitted). Comments that are less severe but more frequent may nonetheless constitute an actionable detriment

---

[4] While Knox does not press the point, the district court's finding that she was not involved in any physical altercations appears to be incorrect. In her deposition, Knox testified that Ashmeade "bumped [her] and pushed [her] into the counter" in an attempt to "get a rise out of [her]." J. App'x 93–94 at 65:22–66:1. Physical altercations can contribute to a hostile work environment even when not specifically accompanied by discriminatory remarks. *See Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 388 (2d Cir. 2020) ("Our case law is clear that when the same individuals engage in some harassment that is explicitly discriminatory and some that is not, the entire course of conduct is relevant to a hostile work environment claim.").

to an employee's working conditions. *See Whidbee*, 223 F.3d at 69. We cannot say that the daily comments that Knox alleges are insufficient as a matter of law. *See Rasmy*, 952 F.3d at 390 ("[T]he overall severity and pervasiveness of discriminatory conduct must be considered. By its very nature that determination is bound to raise factual disputes that likely will not be proper for resolution at the summary judgment stage.").[5]

## II.   Disability Discrimination

Knox alleges that Clean Rite violated state and city law by refusing to provide a reasonable accommodation for her injured thumb—namely, by requiring her to lift more than 25 pounds despite her doctor's instruction not to.

To succeed on her state-law claim, Knox must prove that (1) she was disabled within the meaning of the statute, (2) Clean Rite knew she was disabled, (3) she could have performed the essential functions of her job with a reasonable accommodation, and (4) Clean Rite refused to make such an accommodation. *See Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015). If Knox meets this

---

[5] In part of its analysis, the district court also seemed to discount all but the "five instances of derogatory comments" that Knox alleged "specifically." *Knox*, 2023 WL 22605, at *13. This too was error. We have held that specific descriptions of each instance of harassment—which, if harassment occurred daily, could be difficult to provide—are unnecessary for a plaintiff to defeat summary judgment. *See Torres*, 116 F.3d at 631. A jury "could reasonably find pervasive harassment, even in the absence of specific details about each incident." *Id.*

burden, she also meets her less-demanding burden under the New York City Human Rights Law. *See Romanello v. Intesa Sanpaolo, S.p.A.*, 22 N.Y.3d 881, 885 (2013).

We conclude that Knox has adduced sufficient evidence to defeat summary judgment under both state and city law.[6] The record contains evidence (1) that Knox broke her finger, which prevented her from lifting heavier loads; (2) that she notified Clean Rite management of this injury and her doctor's instruction not to lift more than 25 pounds; (3) that she was able to perform her job while avoiding heavier lifting; and (4) that her supervisor denied her request not to lift more than 25 pounds. At a minimum, the record reflects a genuine factual dispute as to each element of Knox's claim, making dismissal on summary judgment inappropriate.

## III. Wage-and-Hour Violations

Knox also alleges that Clean Rite failed to pay her minimum wage and overtime under the federal Fair Labor Standards Act and state labor law. In particular, she alleges that Clean Rite never paid her for the extra shifts she worked

---

[6] Though dismissing the claim in its entirety, the district court did not address the theory that Knox presses here—that Clean Rite violated state and city law by failing to accommodate her injury. The court's analysis was limited to Knox's theory that Clean Rite fired her because of her injury. Knox does not appeal the grant of summary judgment on that particular issue.

20

at two locations, some of which required her to work more than a total of 40 hours per week.

We conclude that Knox has adduced sufficient evidence to defeat summary judgment on these claims. She stated in her sworn declaration that she worked 32 hours per week at Clean Rite's White Plains Road location, that she worked about 8 hours per week (and sometimes more) at two other Clean Rite locations, and that she never received compensation for her work at these latter two locations. She also testified at her deposition that the employee time sheets appeared to have been altered and that compensation for her hours seems to have been allocated to Ashmeade.

"[A]t summary judgment, if an employer's records are inaccurate or inadequate, an employee need only present sufficient evidence to show the amount and extent of the uncompensated work as a matter of just and reasonable inference." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (alteration adopted) (internal quotation marks omitted). "[A]n employee's burden in this regard is not high. It is well settled . . . that it is possible for the plaintiff to meet this burden through estimates based on his own recollection." *Id.* (citation omitted). Knox has met her burden at this stage.

## IV. Claims Against Individual Defendants

Finally, Knox seeks to reinstate her claims against Ashmeade and Ferris, who have failed to appear since answering the complaint. They are no longer represented by defendants' counsel, who lost contact with them, nor have they appeared pro se in the district court or in this Court. After Ashmeade and Ferris failed to heed the district court's order to appear, Knox moved to strike their answer and for default judgment against them. The district court, in its order granting summary judgment for Clean Rite, denied that motion as moot, reasoning that the claims against Ashmeade and Ferris were not cognizable once the claims against Clean Rite were dismissed. With our reinstatement of the claims against Clean Rite, that premise is no longer sound.

We are cognizant that neither Ashmeade nor Ferris has moved for summary judgment, nor have they appeared in our Court to request affirmance on an alternative ground. In this circumstance, the most appropriate course is to vacate the dismissal of the claims against them and allow the district court on remand to reconsider Knox's motion. We express no view as to whether that motion should be granted.

## CONCLUSION

In sum, we hold as follows:

1.    There being genuine disputes of material fact as to each of Knox's claims against Clean Rite, summary judgment on those claims is inappropriate.

2.    Knox's claims against Ashmeade and Ferris should be reinstated to allow the district court to reconsider Knox's motion to strike their answer and for default judgment.

Accordingly, the judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this opinion.